UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-cr-40008-JPG |
| JAMOND M. RUSH, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Jamond M. Rush's motion to dismiss the First Superseding Indictment in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 211 (2022) (Doc. 28). The Government has responded to the motion (Doc. 38), and Rush has replied to that response (Doc. 43).

**I.      Background**

On April 5, 2022, the grand jury returned an indictment charging Rush with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and seeking forfeiture of the firearm (an AR-15 rifle) and ammunition involved in his alleged offense (Doc. 1). On August 16, 2022, the grand jury returned the First Superseding Indictment changing the charge to receiving or possessing an unregistered short-barreled rifle in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, and seeking forfeiture of the same firearm and ammunition sought in the original indictment (Doc. 18). The relevant part of the National Firearms Act ("NFA") states, "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).

On September 26, 2022, Rush asked the Court to dismiss the First Superseding Indictment on the grounds that the statute requiring him to register his short-barreled rifle in the National Firearms Registration and Transfer Records, 26 U.S.C. § 5861(d), unduly burdens his core Second Amendment

right to keep and bear arms for self-defense. In support, he points to the Supreme Court's recent decision in *Bruen*.

In response, the Government contends that the possession of short-barreled rifles is not protected by the Second Amendment because such a weapon is a "dangerous and unusual weapon" not commonly possessed for self-defense. Furthermore, it argues there is a historical tradition regulating the concealed carrying of dangerous and unusual weapons, including weapons like short-barreled rifles.

**II.     Analysis**

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In the past fifteen years, the Supreme Court has made landmark rulings about the Second Amendment's meaning and application.

The first of these cases, *District of Columbia v. Heller*, 554 U.S. 570 (2008), was decided after decades without any major Supreme Court decisions considering the Second Amendment. It rejected the understanding that the amendment applied only to arms for militia service.

In *Heller*, the Supreme Court considered a District of Columbia prohibition on, among other things, possessing a handgun in the home. *Id.* at 574-75. It concluded that the Second Amendment right to keep and bear arms is not confined to the context of militia service but instead extends to an individual's right to possess and carry weapons for self-defense in case of confrontation. *Id.* at 595. Nevertheless, it acknowledged that the right is not limitless; the Second Amendment does not "protect the right of citizens to carry arms for *any sort* of confrontation." *Id.* (emphasis in original). Indeed, historically "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626 (citing prohibitions on carrying concealed weapons, possession by felons and the mentally ill, carrying in sensitive places, or conditions and qualifications for commercial sales); *accord New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2128

(2022); *McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010).

For example, *Heller* cites *United States v. Miller,* 307 U.S. 174 (1939), for the proposition that certain *types* of weapons are, because of their nature, not covered by the Second Amendment. *Heller*, 554 U.S. at 622. In *Miller*, the weapon at issue was a short-barreled shotgun, which the *Miller* Court observed was not, at the time the Bill of Rights was adopted, "part of the ordinary military equipment" and could not "contribute the to the common defense." *Miller*, 307 U.S. at 178.

*Heller* drew from the *Miller* decision that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 624-25. On the contrary, the Second Amendment covers only arms "of the kind in common use at the time" that a citizen would have been expected to bring with him when called for militia service. *Id.* at 627. The Supreme Court concluded that such an understanding "accords with the historical understanding of the scope of the right," *id.* at 625, and "is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *id.* at 627. *Heller* concluded that the District of Columbia's ban on handguns—the overwhelming public choice for self-defense—held and used for self-defense in the home violated the Second Amendment. *Id.* at 628-29, 635.

There is no reason the exclusion from Second Amendment protection of "dangerous and unusual firearms" should not apply as well to short-barreled rifles, the weapon at issue in this case, as well as short-barreled shotguns, the weapon in *Miller*. *Bruen* did not change this.

The Supreme Court in *Bruen* considered a New York regulation requiring an applicant for a license to carry a firearm in public to have a heightened need for self-protection. The *Bruen* Court started by quickly agreeing that the Second Amendment "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" extended to carrying handguns for self-defense in public, outside the home. *Bruen*, 142 S. Ct. at 2135. It found no fault with non-discretionary licensing

schemes to exercise the public carry right based on objective criteria, but condemned New York's additional requirement that a public carry license applicant demonstrate "proper cause," that is, a "special need for self-protection distinguishable from that of the general community." *Id.* at 2123.[1] New York justified the "proper cause" requirement as "substantially related to the achievement of an important government interest," preventing handgun violence primarily in urban areas. *Id.* at 2125, 2131.

In determining that the "proper cause" requirement infringed on public carry applicants' Second Amendment rights, applied to the states under the Fourteenth Amendment, the Supreme Court held that the constitutionality of a firearm regulation depends solely on whether the restriction is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. There is no "interest balancing" or "means-end scrutiny" inquiry in this determination. *Id.* When a regulation limits conduct covered by the Second Amendment, the Government "must affirmatively prove" that the regulation is part of the historical tradition, or the regulation is unconstitutional. *Id.* at 2127, 2129-30. Thus, the two—and only—relevant inquiries are (1) does the Second Amendment's plain text cover the regulated conduct and (2) is the regulation consistent with the country's historical tradition. *Id.* at 2126. If the regulated conduct is covered, it is presumed that the Constitution protects that conduct, and if there is no historical tradition of regulating that conduct, the regulation is unconstitutional. *Id.* at 2129-30.

As noted above, the *Bruen* Court found the right to carry in public for self-defense fell within the plain text of the Second Amendment, satisfying the first relevant inquiry. *Id.* at 2134-35. Moving on to the second, the *Bruen* Court concluded that the "proper cause" requirement for receiving a public carry license from New York was not within the nation's historical tradition. *Id.* at 2156. Although "the right

---

[1] Restricted licenses were available for non-self-defense uses such as hunting, target-shooting, or employment. *Id.* at 2123.

4

to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms," the *Bruen* Court found no "tradition of broadly prohibiting the public carry of commonly used firearms for self-defense," and no "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 2138, 2156. Therefore, the "proper cause" requirement was unconstitutional. *Id.*

*Bruen* had no impact on the constitutionality of regulating the receipt or possession an unregistered short-barreled rifle. While it eliminated the "interest balancing" or "means-end" tests that some Courts of Appeals had created after *Heller*, it confirmed that the critical inquiry is solely whether the restriction in issue is consistent with Second Amendment's text and historical understanding. *Id.* at 2131.

Rush's alleged conduct is not covered by the plain text or the historical understanding of the Second Amendment. *See United States v. Holton*, No. 3:21-CR-0482-B, 2022 WL 16701935, at *4 (N.D. Tex. Nov. 3, 2022). *Heller* assures that keeping and bearing "dangerous and unusual firearms"—like short-barreled shotguns or rifles or other weapons not typically possessed by law-abiding citizens for lawful purposes—are outside the bounds of Second Amendment protection because such weapons are not in common use by law-abiding citizens for self-defense. Indeed, by enacting the NFA, the statute under which Rush is charged, Congress took aim at "certain weapons *likely to be used for criminal purposes*, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used," not weapons typically used by law-abiding citizens for self-defense. *See United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992) (emphasis added). Far from overruling this part of *Heller*, *Bruen* confirmed that the Second Amendment protects only weapons in common use by law-abiding citizens for self-defense. Thus, regulating the receipt or possession of "dangerous and unusual firearms" like short-barreled rifles does not fall within the Second Amendment.

The Court cannot ignore *Heller*'s clear statement on this point.[2]

Consequently, the offense with which Rush is charged does not infringe on his constitutional right to keep and bear arms as recognized under the Second Amendment, and the Court must deny his motion to dismiss the indictment.

### III.     Conclusion

For the foregoing reasons, the Court **DENIES** Rush's motion to dismiss the First Superseding Indictment (Doc. 28).

**IT IS SO ORDERED.**
**DATED:  January 25, 2023**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**

---

[2] The Court need not reach Rush's argument that short-barreled shotguns and rifles *are* commonly used for self-defense.  This argument runs smack into *Heller*'s finding that they are not, and Congress's decision to regulate them under the NFA precisely because they are not.